```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
BARRY VALLEN,

                    Plaintiff,

     -against-                                ORDER
                                              10-CV-4225(JS)(ARL)

RICHARD MIRAGLIA, COMMISSIONER OF
MENTAL HEALTH (O.M.H.), CURRENT
GOVERNOR OF NEW YORK STATE,

                    Defendants.
----------------------------------X
APPEARANCES:
For Plaintiff:      BARRY VALLEN, Pro Se
                    # 014-2991
                    Pilgrim Psychiatric Center Hospital
                    998 Crooked Hill Road
                    Building 81 - Ward 202
                    Brentwood, NY 11717

For Defendants:     No Appearance
```

SEYBERT, District Judge:

Presently pending before the Court is the pro se Complaint of Barry Vallen ("Plaintiff") brought pursuant to 42 U.S.C. § 1983 against Richard Miraglia, Commissioner of Mental Health and the current governor of New York State, accompanied by an application to proceed in forma pauperis and an application for the appointment of counsel. For the reasons that follow, Plaintiff's request for permission to proceed in forma pauperis is GRANTED but the Complaint is sua sponte DISMISSED without prejudice. Given the dismissal of the Complaint, the application to appoint pro bono counsel is denied without prejudice and Plaintiff may refile an application for the appointment of pro bono

counsel upon submission of an Amended Complaint.

BACKGROUND

I.  Plaintiff's Psychiatric History[1]

> In the early hours of October 5, 1984, Vallen bludgeoned his parents to death while they slept in their bed. Vallen was charged with two counts of Murder in the Second Degree but was found not responsible by reason of mental disease or defect. On March 21, 1986, Vallen was found to have a "dangerous mental disorder" as defined in New York Criminal Procedure Law (CPL) § 330.20(1), and was committed to a secure psychiatric facility, where he remained until December of 1998.

Vallen, 2004 WL 555698, at *1 (citation omitted).

> On December 15, 1998, Vallen was found not to have a "dangerous mental disorder" although he was still "mentally ill," as defined in CPL § 330.20(1)(d). As a result, he was transferred to Pilgrim State Psychiatric Center ("Pilgrim State"), a non-secure facility under the jurisdiction of OMH.

Id.
> On December 5, 1991, Vallen was found to no longer be "mentally ill" and was therefore conditionally released from Pilgrim State into the community. In connection with his release, an "Order of Conditions" was issued. The Order of Conditions, which remains in effect for five years, specifies the conditions a patient must comply with in order to remain at liberty. The Order of Conditions included the following directives:
>
>> 2. The defendant, Barry Vallen, will attend the Sunrise Psychiatric

---

[1] The Court takes judicial notice of the Plaintiff's psychiatric history as set forth in Judge Scheindlin's thorough Opinion and Order in Plaintiff's earlier action, Vallen v. Connelly, No. 99-CV-9947 (SAS), 2004 WL 555698 (S.D.N.Y. March 19, 2004).

2

clinic, 400 Broadway, Amityville, New York , or any other clinic designated by the Commissioner New York State Office of Mental Health or his designee.

3. The defendant, Barry Vallen, shall comply with any and all treatment programs, including medications prescribed initially by his Pilgrim Psychiatric Center treatment team when he is placed on conditional release and/or to any changes in the treatment or medication deemed necessary by the outpatient clinic. The patient shall participate in a variety of group and individual therapy programs and activities, vocational and rehabilitative.

4. The outpatient clinic treating the patient, Barry Vallen, is authorized to modify and develop a treatment plan, including the prescribing of medication, as is clinically indicated, and is authorized to modify and change the initial treatment recommendations of Pilgrim Psychiatric Center when clinically appropriate and necessary.

5. The patient, Barry Vallen, shall submit to appropriate laboratory tests to test for levels of neuroleptic medications and compliance with taking his medications as prescribed by his physicians.

6. The patient, Barry Vallen, shall refrain from the consumption of alcoholic beverages and any unauthorized drugs not prescribed by his physician.

7. The patient, Barry Vallen, shall submit to random blood and urine screenings administered for the

> purpose of detecting unauthorized or illicit drugs or alcohol consumption.
>
> * * *
>
> 12. If the patient, Barry Vallen, fails to comply with the treatment and/or the conditions of this order, or if his conditions should decompensate, the clinic treating the patient and/or the Commissioner New York State Office of Mental Health shall immediately notify this Court, the Orange County District Attorney's office, Mental Hygiene Legal Service and the Attorney General's office....

Id. at *2.

> While living in a state-owned community residence on the grounds of Pilgrim State, Vallen became noncompliant with the terms of the Order of Conditions. Consequently, on August 15, 1992, Vallen was civilly committed to Pilgrim State upon the certification of two physicians that he was in need of involuntary care and treatment in a psychiatric hospital. An application was made by the Commissioner of OMH ("Commissioner") to recommit Vallen pursuant to CPL § 330.20(14). On October 9, 2002, Vallen was transferred from Pilgrim State to Kirby Forensic Psychiatric Center ("Kirby"), a secure facility, for a psychiatric evaluation in connection with the recommitment application. The Commissioner subsequently withdrew the recommitment application and, on April 2, 1993, Vallen was transferred from Kirby to Rockland, a non-secure psychiatric facility.

Id.

> In January of 1994, Vallen was released from Rockland to once again live in the community. The Order of Conditions issued in 1991 remained in effect. Vallen was to receive outpatient services through the

4

> Sullivan County Department of Community Services ("DCS"). Clinicians at Rockland were to monitor Vallen's compliance with the Order of Conditions. With Rockland's approval, Vallen took up residence in an apartment in Monticello, New York. He lived there until he was re-arrested on September 15, 1994, pursuant to New York Mental Hygiene Law ("MHL") § 9.45.

Id. at *3.

\* \* \*

> On September 28, 1994, Judge Weiner issued a Recommitment Order committing Vallen to a secure psychiatric facility for a six-month period. In connection with that Recommitment Order, the court found
>
>> [t]hat the respondent has a dangerous mental disorder requiring care and treatment. He has been diagnosed as having schizophrenia, paranoid type. That because of such condition he constitutes a danger to others and that when he was arrested prior to being brought to Rockland Psychiatric Center on September 15, 1994 he was in possession of firearms.

Id. at *6. From September 1994 through March 2004, Plaintiff was continuously confined to a secure psychiatric facility. Id.

II. The Complaint

Plaintiff is currently involuntarily committed to Pilgrim State Psychiatric Center following a police raid on Plaintiff's apartment where handguns were found. Compl. at ¶ IV. Plaintiff appears to dispute the existence of the handguns and states that, as a result of the raid, he was "found dangerously mentally ill for threatening a relative (I.E. the police report) and charged for gun

5

possession merely on the words of the state police." Id. However, this event does not form the basis for the Complaint.

Plaintiff, in a seven page, single paragraph, handwritten addendum to the Court's pro se complaint form, describes that, as a result of his involuntary commitment to a psychiatric center, he has "fewer rights than felons & terrorists. More consideration is given to terrorists than me and other patients." Compl. at page 7. Plaintiff claims that

> "[t]he laws as they stand today reduce us to property. Conveniently drop charges which take all civil and constitutional rights away and commit - no trials that can later give due process a chance . . . as a group we are not having certain rights that put us outside the 11th Amendment."[2]

Id. According to Plaintiff, "rules are vague and not posted" for example "Rochester Forensic Unit which wharehouses [sic] inmate patients . . . that uses arbitrary and vague non posted procedures to get out and regain freedom." Compl. at page 8.

The Complaint then states vague, general allegations such as "assaults are common with no recourse no posted rules about procedure for being victimized, staff violence especially at mid hudson in Orange County where patients were beat up for years." Id. The balance of the Complaint follows this format and describes incidents alleged to have occurred to other patients. As the Court

---

[2] The Court presumes Plaintiff intended to reference the 14th Amendment.

can best discern, the gravamen of Plaintiff's Complaint challenges the due process afforded psychiatric patients who are involuntarily committed:

> . . . no warrants are needed to enter patients homes - no due process in the collection of evidence. Police's word becomes fact unlike felons, who have due process and rights far above patients. No formal grievience [sic] procedures exist in any forensic prison hospital.

Compl. at page 12. Read liberally, the Complaint also seems allege some type of conspiracy between the State and the OMH:

> Dr.'s lie - no one is perfect. M.H.L.S. is payed [sic] by the State and is a secretive "agency." There really is no such thing as patients rights. Absolute power corrupts absolutely if you have the power to order police to come in ready to kill you less rights than terrorists have in recourse and other areas.

Id.

As a result of the foregoing, the Plaintiff seeks the following relief:

> a change in the 330:20 insanity aquittal [sic] system the ability to take the 330:20 plea back. No staff on patient violence at Kirby Forensic - Mid-hudson Forensic Rochester Forensic hospitals. Decent hot water in all psychiatric facilities in N.Y.S. Steno's at all interrogations or incarceration time meetings or discharge meetings. A posted standard system for discharge in detail in all facilities no arbitrary rules. Trials not hearings. The same constitutional and civil rights as felons and due process procedures. Conjugal visits.

Compl. at ¶ V.

7

DISCUSSION

I.  In Forma Pauperis

Having reviewed Plaintiff's declarations in support of his applications to proceed in forma pauperis, the Court finds that he is qualified to commence this action without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Accordingly, Plaintiff's request for permission to proceed in forma pauperis is GRANTED.

II.  The Prison Litigation Reform Act

The 1996 Prison Litigation Reform Act, codified at 28 U.S.C. § 1915, requires a district court to dismiss an in forma pauperis complaint if the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i-iii); 28 U.S.C. § 1915A(a) & (b); Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). The Court is required to dismiss the action as soon as it makes such a determination. 28 U.S.C. § 1915A(a).

It is axiomatic that pro se complaints are held to less stringent standards than pleadings drafted by attorneys and the Court is required to read the plaintiff's pro se complaint liberally, Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)); Chavis v. Chappius, __ F.3d __, 2010 WL 3221875, at *6 (2d Cir. Aug. 17, 2010), and to

construe them "'to raise the strongest arguments that [they] suggest[].'" Chavis, __ F.3d __, 2010 WL 3221875, at *6 (quoting Harris v. City of New York, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. Kiobel v. Royal Dutch Petroleum Co., __ F.3d __ 2010 WL 3611392, at *6 (2d Cir. Sept. 17, 2010); see also Jackson v. Birmingham Board of Education, 544 U.S. 167, 171, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005).

III. Rule 8 of the Federal Rules of Civil Procedure

Rule 8 of the Federal Rules of Civil Procedure provides, in relevant part, that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," and "[e]ach averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8. Essentially, Rule 8 ensures that a complaint provides a defendant with sufficient notice of the claims against him. See id.; Blakely v. Wells, 209 Fed. Appx. 18, 20 (2d Cir. 2006) (citing Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)). In that vein, the Second Circuit has held that complaints containing only vague or conclusory accusations and no specific facts regarding the alleged wrongdoing do not allow defendants to frame an intelligent defense and are therefore subject to dismissal. See Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

Here, Plaintiff's Complaint falls far short of meeting Rule 8's requirements. In so far as Plaintiff seeks to challenge the conditions of his confinement pursuant to Section 1983, he has failed to sufficiently allege specific facts demonstrating a plausible Eighth Amendment violation. Accordingly, Plaintiff's Complaint is dismissed without prejudice and, as set forth below, Plaintiff is afforded an opportunity to re-plead his Eighth Amendment claim in an Amended Complaint. Plaintiff is warned that he cannot assert claims on behalf of other patients and therefore he should omit any such claims from an Amended Complaint.

IV. Section 1983

Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983 (2000).

To state a Section 1983 claim, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010), cert. denied sub nom Cornejo v. Monn, __ S. Ct. __, 2010 WL 2300385 (Oct. 4, 2010) (quoting Pitchell v.

Callan, 13 F.3d 545, 547 (2d Cir. 1994)).  Section 1983 does not create any independent substantive right; but rather is a vehicle to "redress . . . the deprivation of [federal] rights established elsewhere." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999); see also Rosa R. v. Connelly, 889 F.2d 435, 440 (2d Cir. 1989).

In addition, in order to state a claim for relief under Section 1983, the plaintiff must allege the personal involvement of a defendant in the purported constitutional deprivation. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (quoting Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)).  "Personal involvement" may be established by evidence of direct participation by a supervisor in the challenged conduct, or by evidence of a supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003). "An individual cannot be held liable for damages under Section 1983 'merely because he held a high position of authority,' ***." Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 127 (2d Cir. 2004) (quoting Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996)).  A complaint based upon a violation under Section 1983 that

11

does not allege the personal involvement of a defendant fails as a matter of law. See Johnson v. Barney, 360 Fed. Appx. 199, 2010 WL 93110, at *1 (2d Cir. Jan. 12, 2010).

    A.    <u>Claims Against Richard Miraglia, Commissioner of Mental Health and the Governor of New York</u>

As noted above in order to successfully state a claim under § 1983 a plaintiff must allege personal involvement against a defendant. <u>Farid</u>, 593 F.3d at 249. Here, Plaintiff alleges no personal involvement by either of these defendants nor does he attribute any wrongful conduct to any particular person. Plaintiff's assertions consist of vague charges and conclusory allegations. Even liberally construing Plaintiff's <u>pro se</u> Complaint, Plaintiff has not pled any facts that indicate that the named defendants were personally involved in any deprivation of Plaintiff's constitutional rights. It appears that Plaintiff named these defendants solely by virtue of the positions they hold and not due to any alleged acts committed by them. Accordingly, Plaintiff's Section 1983 claims against the defendants are not plausible and are thus dismissed.

    B.    <u>Leave to Amend</u>

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." When addressing a <u>pro se</u> complaint, a district court should not dismiss without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that

a valid claim might be stated." Thompson v. Carter, 284 F.3d 411, 419 (2d Cir. 2002) (citing Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)). Nevertheless, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman, 371 U.S. at 182, 83 S. Ct. 227. However, if amendment would be futile, i.e., if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6), leave to amend may be denied. See Lucente v. International Business Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002).

Here, notwithstanding Plaintiff's pro se status, it is readily apparent that he does not have a plausible Section 1983 claim against these Defendants. Rather, given the relief sought, it appears that Plaintiff seeks to change the legal framework for the commitment and recommitment of mentally ill individuals. This Court is without authority to re-write the State Mental Hygiene law and, accordingly, leave to amend the Complaint in this regard is

denied.  However, in an abundance of caution, Plaintiff also appears to challenge the conditions of his confinement.  Plaintiff is afforded an opportunity to amend his Complaint to include specific factual allegations against the individuals he claims have violated his Constitutional rights.  Accordingly, Plaintiff is granted leave to amend his Complaint to replead his Section 1983 claim against proper defendants, limiting his allegations to incidents pertaining only to himself and not other patients. Plaintiff shall file any Amended Complaint in accordance with this Order within thirty (30) days from the date this Order is served with notice of entry upon him, or his Complaint will be deemed dismissed with prejudice.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiff is granted leave to file the Complaint without prepayment of the $350.00 filing fees or security; and

IT IS FURTHER ORDERED the Clerk of the Court mail a copy of this Order, to the Plaintiff; and

IT IS FURTHER ORDERED that the Complaint in its entirety is DISMISSED without prejudice; and

IT IS FURTHER ORDERED that Plaintiff may file an Amended Complaint. An Amended Complaint must be labeled "Amended Complaint" and must bear the docket number 10-CV-4225 (JS)(ARL).

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     December   30   , 2010
           Central Islip, New York